## S16A1042. BURNEY v. THE STATE.
(792 SE2d 354)

NAHMIAS, Justice.

Appellant Octavious Burney challenges his convictions after a jury trial for malice murder and a firearm offense in connection with the shooting death of Leonard Young. Appellant contends that the trial court applied the wrong standard in denying his motion for new trial, abused its discretion in denying his motions to strike four potential jurors for cause, deprived him of his constitutional right to be present at all critical stages of the trial with respect to juror notes to the court, and violated OCGA § 17-8-57 by commenting on the evidence in front of the jury. Appellant also contends that he was denied the effective assistance of counsel. We affirm.[1]

1. (a) Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. On the afternoon of May 11, 2009, the victim walked with his girlfriend, Shaniqua Arrington, and a friend of hers to a bus stop in southeast Atlanta. Shortly after they got there, co-defendant Steven Stillwell approached the victim from a gas station behind the bus stop, saying, "Hey, I heard you . . . was riding around looking for me." The victim replied, "If I wanted you, I

---

[1] The victim was killed on May 11, 2009. On October 27, 2009, a Fulton County grand jury indicted Appellant and Steven Stillwell for malice murder, felony murder, two counts of aggravated assault (against Young and Julius Ruffin), and two counts of possession of a firearm during the commission of a crime. At a trial from March 4-8, 2013, the jury acquitted Stillwell on all counts but found Appellant guilty of malice murder, felony murder, the aggravated assault against Young, and one firearm possession count. The aggravated assault and associated firearm charge related to Ruffin were not included on the verdict form for some reason; with the State's consent, the trial court directed a verdict of acquittal on those two counts. On March 11, 2013, the court sentenced Appellant to serve life in prison for malice murder and five consecutive years for the firearm conviction; the felony murder count was vacated by operation of law, and the aggravated assault verdict merged. Appellant filed a motion for new trial the same day and, after retaining new counsel, filed a substantially identical motion on March 20, 2013, which he amended on March 17 and May 28, 2015. The trial court held an evidentiary hearing on May 29, 2015, and entered an order denying the motion on June 10, 2015. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the April 2016 term and submitted for decision on the briefs.

know where your mother and your grandma stay." The two men then began arguing loudly and walking toward each other.

Meanwhile, Arrington saw a man wearing a black shirt, whom she knew as "Tay-Tay" and later identified as Appellant, walk from the gas station to the victim and attempt to punch him.[2] The victim ducked to avoid the punch, and as he rose he punched Appellant in the mouth, causing Appellant to bleed. Arrington heard Stillwell say, "I ought to bust this f\*\*king n\*\*\*a." Stillwell then walked to a car parked in front of the gas station, retrieved a gun, and walked back toward the victim and Appellant. Arrington said, "He got the gun," and the victim started to run away. Arrington then saw Stillwell hand the gun to Appellant, who fired multiple shots in the victim's direction before running from the scene. The victim was struck once in the back. After he was shot, he turned around and ran to Arrington, collapsing into her arms. Arrington's friend saw an ambulance driving by and flagged it down. The victim was taken to the hospital, but he died during surgery.[3]

Deidra Favors was stopped in her car at a traffic light in front of the gas station when she heard the first gunshot. She looked out her side window and saw a tall, dark-skinned man wearing a black shirt firing a gun. Favors saw the man fire about three more shots before he got into a car and drove away. She then saw another man with blood on his shirt fall to his knees across the street.

Favors called 911 to report the incident. When the police arrived at the scene, they found that Julius Ruffin, who lived across the street from the gas station, had also been shot. He was taken to the hospital where he received treatment for his wound. Ruffin testified at trial that prior to being shot, he saw two guys fighting and two girls trying to break them up.

Neither Appellant nor Stillwell testified at trial. Appellant presented two witnesses — a character witness and Sam Vinnie. Vinnie testified that he saw Stillwell and the victim arguing, after which Stillwell walked off. He then saw a "kind of short" man he knew as "Tay-Tay" fight with the victim, and shortly after, "Tay-Tay" started

---

[2] A detective interviewed Arrington on the night of the shooting and learned that the shooter was a man with the nickname "Tay-Tay." According to the detective, "Tay-Tay" is a common nickname. The detective showed Arrington three photo lineups that included men with that nickname, but she did not see the shooter's picture. The next day, the detective showed Arrington a photo lineup that included Appellant, and she identified him as the shooter. She also identified Appellant as the shooter in court. No other witness directly identified Appellant as the shooter.

[3] Arrington told a police officer at the crime scene that Stillwell fired one shot before giving the gun to Appellant, who fired more shots, but at trial she testified that she did not recall saying that at the scene.

shooting at the victim. At that point, Vinnie ran away from the scene. Vinnie claimed that the "Tay-Tay" he saw that day was not Appellant.

(b) Appellant does not dispute the legal sufficiency of the evidence supporting his convictions. Nevertheless, in accordance with this Court's practice in murder cases, we have reviewed the record and conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citations omitted)).

(c) Appellant does contend that the trial court failed to review his motion for new trial under the discretionary "thirteenth juror" standard codified at OCGA §§ 5-5-20 and 5-5-21.[4] "In exercising that discretion, the trial judge must consider some of the things that she cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence." *White v. State*, 293 Ga. 523, 524 (753 SE2d 115) (2013). As relevant here, the court's order denying the motion said:

> After a review of the transcript, the Court finds that it is apparent the jury carefully weighed the evidence and considered the credibility of the witnesses in reaching its verdict. The Court thus approves the verdict that was rendered by the impaneled jury and declines to grant a new trial on general grounds.

Contrary to Appellant's argument, the import of this passage is that the court ruled on the motion based on its own independent review of the trial record and found no discrepancy between the jury's conclusions regarding the weight of the evidence and the credibility of the witnesses and the court's own views of those matters. Moreover, the transcript of the motion for new trial hearing shows clearly that the court understood its obligations as the so-called thirteenth juror. During the hearing, Appellant gave the court a decision from this

---

[4] OCGA § 5-5-20 says: "In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury." OCGA § 5-5-21 says: "The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding."

Court outlining those obligations, and the court noted that it needed to decide the motion quickly because a successor judge was taking over in a month and the motion required a ruling under the thirteenth juror standard. This is not a case "where the trial court explicitly declined to consider the credibility of the witnesses in denying the defendant's motion for new trial" or "ma[d]e clear its belief that it had no discretion to grant a new trial despite disagreeing with the jury's verdict." *Butts v. State*, 297 Ga. 766, 772 (778 SE2d 205) (2015). Accordingly, this enumeration of error lacks merit.

2. Appellant asserts that the trial court abused its discretion in denying his motions to strike four prospective jurors. Each of the challenged jurors gave answers to some voir dire questions that could indicate bias against Appellant's case, but the jurors also all stated that they would try to set aside any personal feelings or bias and be fair and impartial. "Trial courts have considerable discretion to determine whether a juror can be impartial." *Murdock v. State*, 299 Ga. 177, 179 (787 SE2d 184) (2016). The trial court is " 'uniquely positioned to evaluate whether a prospective juror can render an impartial verdict, considering that the trial judge . . . can observe a prospective juror in person and take account of her demeanor and countenance, not just the words that she speaks.' " *Edenfield v. State*, 293 Ga. 370, 379-380 (744 SE2d 738) (2013) (citation omitted). See also *Ellington v. State*, 292 Ga. 109, 127 (735 SE2d 736) (2012) ("[T]rial judges, who oversee voir dire on a regular basis, are more familiar with the details and nuances of their cases, and can observe the parties' and the prospective jurors' demeanor."). On the record in this case, we see no abuse of the trial court's considerable discretion with respect to the jurors at issue. See *Edenfield*, 293 Ga. at 386-387 (discussing rehabilitation of prospective jurors).

3. Appellant contends that his convictions must be reversed because the trial court violated his constitutional "right to be present, and see and hear, all the proceedings which [were] had against him on the trial before the [c]ourt." *Wade v. State*, 12 Ga. 25, 29 (1852) (emphasis omitted). Accord *Wilson v. State*, 212 Ga. 73, 74-75 (90 SE2d 557) (1955) (" 'The accused and his counsel have the right to be present at every stage of the proceedings and personally see and know what is being done in the case.' " (citation omitted)). We conclude that Appellant acquiesced in the error he asserts.

(a) Near the end of the first day of trial, after 41 prospective jurors had been questioned in a group and then individually about hardships in serving, bias or prejudice toward either party, and other grounds for striking prospective jurors, the parties selected 12 trial jurors and one alternate. At about 5:40 p.m., those chosen to serve were asked to collect their belongings and take a seat in the jury box

as the clerk called their numbers, and the court then excused the other potential jurors. The court briefly addressed as a group the selected jurors, instructing them to assemble the next morning in the jury room, which the court said a deputy would show them on their way out. The court said to one of the jurors, "The deputy is going to speak with you, ma'am." The court then released the jury for the evening. After the jurors left, the court asked the parties to be in the courtroom the next morning at 8:45 a.m. to address motions in limine before preliminary instructions to the jury and opening statements. After answering a question from Appellant's co-defendant about a motion, the court said, "All right. We'll be in recess until we find out what this issue [with one of the jurors] is. But I think they had more than enough opportunity to bring up any hardships."

During the recess, five jurors sent notes to the court. Two jurors asked what time court would end each day; two jurors sought to be excused from service for hardship; and one juror noted a family law enforcement connection that the juror said had slipped his mind when he was individually questioned about such connections earlier in the day.[5] The court held an off-the-record discussion with the prosecutors and defense counsel; Appellant was not included in this discussion. The court then went back on the record, and counsel for Appellant's co-defendant said, "I would just ask that each note be marked just in case it becomes an issue later on." The court replied, "Okay. I think that's probably reasonable. Do y'all want to then look at the notes?" One of the prosecutors said, "Sure." The next notation in the transcript is that court was adjourned for the day at 6:01 p.m. The record indicates that the prosecutors and counsel for both defendants reviewed the notes that evening.

The following morning, with Appellant present, the trial court brought up the juror notes again:

> Where we left off yesterday was the jury gave us some questions that they had concerning their service and disclosures, and I want to mark those as Court's Exhibits 1, 2, 3,

---

[5] Appellant focuses his argument on this last note, which said: "Concern – It slipped my mind but my father is a warden. He was employed with the Federal Bureau of Prisons. He retired in '95 but took employment with a private prison company. He is now a warden for a facility in New Mexico." During general voir dire, this juror had indicated that he had "family and/or friends . . . in law enforcement," and he explained during individual questioning that they were police officers in other states, including one who had worked homicide cases and was retired, and prosecutors or criminal defense attorneys not in Atlanta, but he never had occasion to speak to any of these individuals about their cases. Neither this juror nor the other four who sent the notes were among the four prospective jurors whom Appellant unsuccessfully asked the trial court to strike for cause, see Division 2 above.

4 and 5. I have spoken to the attorneys about these matters, and I intend to address them in my preliminary instructions. Basically, there are scheduling issues and then one disclosure that didn't come up in voir dire yesterday. Anybody want to say anything else about it?

The court asked a prosecutor who was not in the courtroom the day before whether he wanted to look at the notes, and the prosecutor said, "If I could briefly." The court then asked if the defense had any other suggested method for dealing with the notes. Counsel for Appellant's co-defendant said, "No, Judge, other than, you know, I think a lot of this was kind of at the 13th hour because it was after they were selected on the jury that we had those issues." The court said, "I'm not sure they are really issues, and I do intend to address them in my instructions pretty sternly. And I hope they don't become an issue." The prosecutor reviewing the notes said, "They do appear to be just more scheduling problems," and the court said "Okay" and moved on to the motions in limine. Neither Appellant nor his counsel objected or asked that the juror notes be read into the record or shown to Appellant for him to read.

After the court addressed the motions in limine, the jurors were brought into the courtroom and sworn in. The court then gave them preliminary instructions, including the following:

Now, with regard to some of the specific questions that were asked yesterday, let me make the following additional comments after consultation with the attorneys in this case. With regard to some additional disclosures that jurors made, let me assure you that the parties and their attorneys are aware of those matters. With regard to meetings, child care and other appointments that you have, let me say that we anticipate concluding the evidence in this case on Thursday. The case would then be given to you, and you would have the time to deliberate as you deem appropriate in reaching your verdict. So we do anticipate that the case would be completed this week. But ultimately, that will depend on how long the jury deliberates. As for our daily work, I anticipate we'll wrap up around 5:00 o'clock each day, or wherever there's a logical stopping point. I know some of you have work-related issues, and if there's anything that my staff or I can do to facilitate rescheduling, please let us know and we'll be happy to do so. . . .

Nothing more was said about the issue during the trial.

More than two years later, at the hearing on Appellant's motion for new trial, he testified that he had asked his trial counsel what the juror notes were about and she told him "scheduling issues," which Appellant claimed his counsel said meant "what time we would leave and stuff of that nature." Appellant's trial counsel testified that she talked to him at trial about the juror notes, but she did not think that he ever read them. When trial counsel was asked whether she told Appellant about the contents of any of the notes, she said, "[t]he contents of the notes, I believe, might of just been me just saying that they were scheduling notes, people trying to get off and that was it." On cross-examination by the State, trial counsel reiterated that she spoke to Appellant about "the scheduling issues with the notes" and said that she remembered telling him "that the notes were just people trying to get out of jury [service]." The trial court denied the motion for new trial, making no mention of this testimony.

(b) Appellant contends that the trial court violated his right to be present by failing to read aloud in open court or show him the notes, which were communications between the five jurors and the court. Two of the notes, which asked what time the jury would be let go each day, related solely to a logistical issue of the sort that does not implicate the right to be present. See *Heywood v. State*, 292 Ga. 771, 774 (743 SE2d 12) (2013). However, the other three notes involved the composition of the jury that tried Appellant (and his co-defendant), so Appellant had the right to have the notes read aloud in open court or shown to him so that he could read them for himself. See id. at 774-775; *Zamora v. State*, 291 Ga. 512, 518-519 (731 SE2d 658) (2012). See also *Murphy v. State*, 299 Ga. 238, 240 (787 SE2d 721) (2016) (holding that "a defendant who is present in the courtroom but who does not participate in a bench conference at which a juror is discussed and dismissed is not 'present' to the extent required under the federal and state Constitutions"); *Pennie v. State*, 271 Ga. 419, 421 (520 SE2d 448) (1999) (holding that "the trial judge should have no communications with a juror about the case, except as to matters relating to the comfort and convenience of the jury," in the absence of the defendant).[6] That did not happen in this case.

---

[6] Citing *Lowery v. State*, 282 Ga. 68 (646 SE2d 67) (2007), Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.70.45 Closing Language (for judge only) (updated July 2014) says:

> The following is the required procedure for jury communication to the court from outside the courtroom:
> 1) Any jury communication to the court must be in writing.
> 2) *Parties must be informed of the communication's content*, and the writing must be marked as an exhibit and entered into the record.
> 3) The court must allow counsel to suggest an appropriate response.

However, "the right to be present belongs to the defendant, and he is free to relinquish it if he so chooses." *Hampton v. State*, 282 Ga. 490, 492 (651 SE2d 698) (2007). The right to be present is waived

> if the defendant personally waives it in court; if counsel waives it at the defendant's express direction; if counsel waives it in open court while the defendant is present; or if counsel waives it and the defendant subsequently acquiesces in the waiver.

Id. As our precedents explain, acquiescence, which is a tacit consent to acts or conditions, "may occur when counsel makes no objection and a defendant remains silent after he or she is made aware of the proceedings occurring in his or her absence." *Murphy*, 299 Ga. at 240. See, e.g., *Smith v. State*, 298 Ga. 406, 410-411 (782 SE2d 269) (2016); *Jackson v. State*, 278 Ga. 235, 237 (599 SE2d 129) (2004). Acquiescence "implies a knowledge of those things which are acquiesced in," as "[o]ne can not acquiesce in a wrong while ignorant that it has been committed." *Ward v. State*, 288 Ga. 641, 646 (706 SE2d 430) (2011) (citations and punctuation omitted).

It is clear that Appellant did not personally waive in court his right to see or hear the juror notes and that his counsel, who knew what the notes said, did not waive Appellant's right at his express direction or in his presence. It is also clear, however, that Appellant and his counsel did not object to the trial court's handling of the notes or ask that they be read aloud in open court or given to Appellant so that he could read them himself. The question is whether Appellant had sufficient information concerning the notes and the nature of their contents to fairly construe his silence in this regard as acquiescence. We conclude that he did.

At the end of the first day of his trial, Appellant knew that there were notes that he had not seen, which had been discussed at a bench conference that he could see occur but from which he was excluded. Appellant also knew that he could view the notes if he wanted to, as the trial court asked in open court, "Do y'all want to then look at the notes?" Appellant was not excluded from this invitation. Moreover, as soon as court began the next morning, Appellant (along with the other trial participants) was reminded by the trial court of the notes that he had not seen or read and was advised that they came from the jury and

---

4) The court must inform counsel of the court's intended response.

5) The court must allow the opportunity for counsel to respond.

(Emphasis added.) Although the requirement reflected in the italicized language does not appear in *Lowery*, it is consistent with this Court's holdings on the defendant's constitutional right to be present.

of their general subject matter. The court clearly indicated that there were five notes from the jury and that the notes had to do with "scheduling issues" and "disclosures" that might affect jurors' willingness or ability to serve, in particular "scheduling issues and then one disclosure that didn't come up in voir dire yesterday." The court directly asked if "[a]nybody want[ed] to say anything else about [the issue]" and if the defense had any other suggested method of dealing with the notes. Counsel for Appellant's co-defendant highlighted the concern that the issues the jurors raised in the notes had come to light at the "13th hour," after the jury had been selected. And when the jury was brought in, the court told them that "[w]ith regard to some *additional disclosures* that jurors made, let me assure you that *the parties and their attorneys* are aware of those matters." (Emphasis added.)

Yet Appellant did not ask to see the notes or ever complain at trial to his attorney or the court about not seeing them. Only after the jury — several members of which he knew had sent the notes — found him guilty did Appellant raise a complaint.[7] Under these circumstances, we conclude that Appellant acquiesced in the court's handling of the juror notes. See *Murphy*, 299 Ga. at 242 (holding that where the appellant "was aware of the announced procedure for selecting a jury, witnessed the bench conferences, and heard the discussions concerning the challenged members' qualifications and the judge's rulings, [but] remained silent," she acquiesced in her absence from the bench conferences (footnote omitted)); *Scudder v. State*, 298 Ga. 438, 440 (782 SE2d 638) (2016) (holding that the defendant acquiesced in the denial of his right to be present when the trial court spoke with a witness in chambers, because the defendant knew that he had been excluded from the meeting and the nature of the discussion but did not object or ask for the transcript of the meeting to be revealed to him); *Zamora*, 291 Ga. at 520 (holding that the defendant acquiesced in the dismissal of a trial juror at a bench conference that occurred in his absence where the defendant did not voice any objection until his appeal brief); *Jackson*, 278 Ga. at 237 (holding that the "appellants

---

[7] In his testimony at the motion for new trial hearing, Appellant claimed that he asked his trial counsel about the notes and she said they involved only scheduling matters in the nature of when court would end each day. Trial counsel testified that she told Appellant that the notes involved scheduling issues, but not merely logistical ones, clarifying on both direct and cross-examination that the notes came from jurors the parties had selected who were now trying to "get off" the jury. The trial court gave no indication that it credited either witness's testimony, which conflicted with the court's clear indication at trial that the notes involved scheduling issues and a separate disclosure. But even if the court credited trial counsel's recollection over Appellant's self-serving testimony, trial counsel made Appellant aware at trial that the notes related to jurors — who for all Appellant knew were the jurors he thought he most wanted deciding his case — who had not been fully forthcoming in voir dire and who were trying now to get off the jury.

acquiesced in the proceedings [occurring in their absence] when their counsel made no objection and appellants thereafter remained silent after the subject was brought to their attention"); *Hanifa v. State*, 269 Ga. 797, 807 (505 SE2d 731) (1998) (finding acquiescence where the defendant failed to object after learning prior to the return of the jury's verdicts that the court had spoken with the jury outside of his presence).[8] Accordingly, Appellant is not entitled to a new trial on this ground.

4. Appellant also claims that the trial court violated the former version of OCGA § 17-8-57 by saying, in front of the jury, "I think we've heard from the witnesses, the eyewitnesses themselves where people were. I haven't heard any conflicting testimony about that." At the time of Appellant's trial in 2013, the statute said:

> It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted in the court below with such directions as the Supreme Court or Court of Appeals may lawfully give.[9]

We conclude that the challenged comment did not violate former OCGA § 17-8-57.

---

[8] Compare *Ward*, 288 Ga. at 646 (holding that the defendants could not knowingly acquiesce to a waiver by their attorneys where they were not informed that a juror was removed outside their presence or the reason for the removal); *Sammons v. State*, 279 Ga. 386, 388 (612 SE2d 785) (2005) (holding that the defendant did not "acquiesce in the illegal proceedings in her absence and repudiated trial counsel's apparent silent waiver of her rights at the first opportunity," where she learned during trial that a juror was replaced outside her presence but not the reason for the juror's removal and she told her counsel, who failed to take any action, that she did not want that juror replaced); *Pennie*, 271 Ga. at 423 (holding that there was no acquiescence where the defendant only learned after trial about a discussion in chambers in her absence regarding the potential removal of a juror who was left on the jury and the defendant raised the issue at the first opportunity on motion for new trial).

[9] Effective July 1, 2015, OCGA § 17-8-57 was amended to say:
(a) (1) It is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused.
   (2) Any party who alleges a violation of paragraph (1) of this subsection shall make a timely objection and inform the court of the specific objection and the grounds for such objection, outside of the jury's hearing and presence. After such objection has been made, and if it is sustained, it shall be the duty of the court to give a curative instruction to the jury or declare a mistrial, if appropriate.

The trial court made the comment in the course of sustaining co-defendant Stillwell's objection to the prosecutor's questioning of a police detective who investigated the case about diagrams and photographs purporting to show the locations of individuals at the time of the shooting. As we reiterated shortly before Appellant's trial, former OCGA § 17-8-57 " 'does not generally extend to colloquies between the judge and counsel regarding the admissibility of evidence,' " because " 'remarks of a judge assigning a reason for his ruling are neither an expression of opinion nor a comment on the evidence.' " *Ellis v. State*, 292 Ga. 276, 282 (736 SE2d 412) (2013) (citation omitted).

Moreover, in context, it is clear that the trial court was not suggesting its opinion as to Appellant's presence at the crime scene or indeed as to where any particular person was, or even who the "people" were. Instead, the court was explaining that the detective need not repeat what he learned from eyewitnesses to the crimes. Compare *Chapman v. State*, 217 Ga. App. 264, 264-265 (457 SE2d 206) (1995) (holding that the trial court violated former OCGA § 17-8-57 where, in ruling on an objection, the court indicated that a witness had made a positive identification of the defendant, which was a key issue in the case). For these reasons, this enumeration of error lacks merit.[10]

---

(b) Except as provided in subsection (c) of this Code section, failure to make a timely objection to an alleged violation of paragraph (1) of subsection (a) of this Code section shall preclude appellate review, unless such violation constitutes plain error which affects substantive rights of the parties. Plain error may be considered on appeal even when a timely objection informing the court of the specific objection was not made, so long as such error affects substantive rights of the parties.

(c) Should any judge express an opinion as to the guilt of the accused, the Supreme Court or Court of Appeals or the trial court in a motion for a new trial shall grant a new trial.

[10] In a recent case addressing OCGA § 17-8-57, we noted:

Under former OCGA § 17-8-57, the absence of an objection [at trial] did not limit appellate review, and so, the failure to object in this case would be inconsequential. In 2015, however, the General Assembly amended the statute and added a provision that limits the scope of appellate review in cases in which no timely objection was made at trial. Today, in the absence of a timely objection, a judicial comment — other than a comment on the guilt of the accused — amounts to reversible error under the statute only to the extent that it is "[a] plain error which affects substantial rights." Unlike the new Evidence Code, ... the 2015 amendment of OCGA § 17-8-57 is not limited expressly to cases tried on or after its effective date. And ... unless the statutory law indicates otherwise, "an appellate court [typically] applies the law as it exists at the time its opinion is rendered." This is especially true of law that is only procedural in nature. And the provision of the 2015 amendment with which we are concerned — OCGA § 17-8-57 (b) — applies not to proceedings in

5. Finally, Appellant asserts that he received ineffective assistance of counsel due to his trial counsel's failure to make an objection. To prevail on this claim, Appellant must show that his counsel's performance was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to him. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984); *Long v. State*, 287 Ga. 886, 891 (700 SE2d 399) (2010). Appellant has not met his burden.

Appellant claims that his trial counsel was deficient in failing to object to the admission of a statement introduced by a detective who testified that the victim's girlfriend, Shaniqua Arrington, told him on the night of the shooting that "Little Steve and Tay-Tay came up to the parking lot where the incident occurred and some type of struggle ensued and Little Steve, she said, had a gun, fired a shot and Tay-Tay ended up getting the gun from him and fired the shot." Appellant argues that the portion of this statement identifying him as a shooter would have been excluded if his counsel had objected on the ground that it was inadmissible as a prior *consistent* statement under OCGA § 24-6-613 (c), because it improperly bolstered Arrington's testimony. At trial, Arrington testified that she could not recall whether she accused co-defendant Steven Stillwell of being an additional shooter, but at multiple points she testified that Appellant shot the victim. Appellant's argument fails because Arrington's statement was properly admitted as a prior *inconsistent* statement under OCGA § 24-6-613 (b). See *Moss v. State*, 298 Ga. 613, 617 (783 SE2d 652) (2016) (noting that " '[t]he failure to make a meritless . . . objection does not provide a basis upon which to find ineffective assistance of counsel' " (citation omitted)).

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 17, 2016.

*The Steel Law Firm, Brian Steel*, for appellant.

---

the trial court, which, in this case, predated the amendment. Rather, that provision is specifically directed to appellate review. The appeal in this case, of course, followed the amendment.

*Pyatt v. State*, 298 Ga. 742, 747 n. 9 (784 SE2d 759) (2016) (citations omitted). However, we did not decide in *Pyatt* whether the 2015 amendment applied, because there was no error even under the former version of the statute. See id. The Court of Appeals has subsequently held in a divided whole-court opinion that the current version of the statute applies on appeal of cases tried before the amendment. See *Quiller v. State*, 338 Ga. App. 206, 208-209 (789 SE2d 391) (2016). As in *Pyatt*, we need not resolve this remedial question, because there was no error under former OCGA § 17-8-57.

*Paul L. Howard Jr., District Attorney, Paige Reese Whitaker, Michael V. Snow, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Scott O. Teague, Assistant Attorney General*, for appellee.