**FIRST DIVISION
BARNES, P. J.,
MCMILLIAN and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten days
of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 24, 2017**

# In the Court of Appeals of Georgia

A17A0672. THE STATE v. CREWS.

MERCIER, Judge.

Tyler Roderick Crews was found guilty by a Pierce County jury on October 21, 2008, of one count of armed robbery, two counts of aggravated assault, one count of burglary and one count of terroristic threats arising from a robbery. Crews filed a motion for new trial on October 29, 2008. Crews's motion for new trial was denied, and he appealed. Crews's appeal of the denial of his motion for new trial was assigned Case No. A09A1921.

In that appeal, Crews filed his brief claiming two enumerations of error: first, that the evidence was insufficient to support the verdict; and second, that the defendant was prejudiced by wearing leg shackles during trial. After the State filed its brief, Crews filed a motion to remand to raise an ineffective assistance of counsel

claim. On August 19, 2009, this Court remanded the matter to the trial court "to allow appellant to file a motion for new trial raising the issue of the alleged ineffectiveness of trial counsel[.]"

Crews filed a motion for new trial on August 24, 2009, claiming that there was insufficient evidence to support the verdict and that he received ineffective assistance of trial counsel. Crews filed an amended motion for new trial on August 14, 2014, claiming that he received ineffective assistance of counsel and that he had been denied the right to a fair trial because he was shackled at trial, without cause. The trial court granted Crews's motion for new trial on September 27, 2016, stating that Crews received ineffective assistance of trial counsel and his right to a presumption of innocence was violated when jurors witnessed him shackled and escorted into the courthouse by sheriff deputies. The State filed the present appeal, Case No. A17A0672, pursuant to OCGA § 5-7-1 (a) (8), regarding the trial court's order granting Crews's motion for new trial. In its two enumeration of errors, the State contends that the trial court erred in finding trial counsel ineffective and that the trial court did not have jurisdiction to consider the issue of whether Crews's right to a fair trial was violated due to his legs being shackled during the trial. We agree and reverse.

Viewed in the light most favorable to the verdict, the record reveals that Mr. and Ms. D. R. were home on January 21, 2007 when someone knocked on their door. Ms. D. R. believed that their neighbor was knocking, and told the individual to come inside. A white man entered their home wearing a gray ski mask, which mask left only the man's eyes, mouth and apparently bleached blond hair exposed.

The man stated "[Mr. D. R.], I've been hired to kill you, and I've done been paid" and said that Mr. D. R. owed money to someone in Brunswick. Mr. D. R. told the man that he did not owe money to someone in Brunswick and gave him approximately $30 to $80 cash that he had in his wallet

While the man was in the home, Ms. D. R. stood up and walked toward the man, who then pointed the gun at her and told her to sit down before he shot her. Ms. D. R. stated that she recognized the man, and the individual then seemed to act nervous and tried to tuck his hair into his mask.

Mr. and Ms. D. R.'s son J. R. then came into the living room. The individual pointed his gun at J. R. and told him to go back to his bedroom. However, J. R. grabbed his cell phone, ran out of the back door of the home and called 911. The individual then left the home.

At trial S. G. testified that Crews told him that he had committed an armed robbery in a home that was interrupted when "some guy walked out in the hall[.]" S. G. reported the conversation to the police in September 2007. S. G. had a prior relationship with Mr. and Ms. D. R. S. G. had previously worked for Mr. D.R. and Mr. and Ms. D. R.'s daughter and son-in-law and, while working for them, had "forged stuff, charged stuff on [Mr. D. R.'s] account at Hoboken," and stolen mobile home tires from Mr. D. R.

The detective who took S. G.'s statement testified at trial that in September 2007, S. G. told him that Crews had told S. G. that he had gone to a house on Mr. and Ms. D. R.'s street, with a gun and robbed them. However, S. G. reported to the detective that Crews said he was not able to get much money because he left the house quickly after a boy entered the room with a cell phone in his hand. The detective stated that the fact that a boy interrupted the home invasion had not been released to the media. Due to S. G.'s statement, the detective arrested Crews, who had "long and shaggy" hair four to six inches in length that, at the time of the arrest, was "dyed bleach-blonde[sic]" on the ends; this was approximately nine months after the date of the home invasion.

4

At the close of the State's case, Crews moved for a directed verdict. After hearing Crews's argument, the trial judge stated "Well, I'll say this. It's about as thin as I've ever seen. And it's probably deserving of the motion being granted . . . I can't recall having seen a case with much less evidence." Ultimately, the trial court denied the motion stating "we're going to let the jury decide whether or not they want to believe what [the detective] tells them that [S. G.] told them, and we'll go from there."

After the directed verdict ruling, the parties discovered that Crews was wearing leg shackles. Crews moved for a mistrial, and the Court reserved the ruling until after the jury returned its verdict. Following the jury's verdict, the trial court polled the jurors individually regarding the leg shackles. Two jurors stated that they had seen that Crews was wearing leg shackles. The trial court denied the motion for mistrial.

"The first grant of a new trial shall not be disturbed by an appellate court unless the appellant shows that the judge abused his discretion in granting it and that the law and facts require the verdict notwithstanding the judgment of the presiding judge." OCGA § 5-5-50. "However, the first grant of a new trial on special grounds involving a question of law is reviewable in a proper appeal. We review such a question of law de novo and reverse if the trial court committed legal error." *O'Neal v. State*, 285 Ga. 361, 363 (677 SE2d 90) (2009) (citation and punctuation omitted).

After Crews's appeal was remanded, the trial court held two hearings on Crews's amended motion for new trial , wherein Crews testified that his counsel was ineffective for failing to call his parole officer to testify at trial. Crews's parole officer testified at the second hearing that Crews had "performed real well on parole. He had a good attitude. He obtained and maintained employment. He reported as needed." Following Crews's arrest for the crimes at issue, the parole board pursued revocation of Crews's parole, and he signed a parole waiver admitting to a technical parole violation for being in arrears on his parole fees. Prior to the final hearing for Crews's parole revocation, the parole officer spoke to S. G., but the officer said that he did not "recall a lot about what he might have said. It seems like [S. G.] said something that [Crews] told him something about he told him - - somebody told - - a third party told him that he said that he had committed some offense - - he heard that he committed these offenses or something like that." The parole officer could not recall being interviewed by Crews's trial counsel. Crews's trial counsel testified that prior to trial she and her co-counsel discussed calling the parole officer but determined "that it was better not to call him and make the jury aware that [Crews] was on parole."

The State appeals the grant of the motion for new trial with two enumerated errors.

6

1. First, the State asserts that the trial court erred by finding Crews's counsel ineffective for failing to interview and possibly call Crews's parole officer as a defense witness because that decision was a matter of trial strategy. To prevail on a claim of ineffective assistance of counsel, Crews "must show that his counsel's performance was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to him." *Burney v. State*, 299 Ga. 813, 824 (5) (792 SE2d 354) (2016) (citing *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984)) (citation omitted).

> Failure to satisfy either prong of the *Strickland* test is sufficient to defeat a claim of ineffective assistance, and it is not incumbent upon this Court to examine the other prong. . . . Further, although both the performance and prejudice components of an ineffectiveness inquiry involve mixed questions of law and fact, a trial court's factual findings made in the course of deciding an ineffective assistance of counsel claim will be affirmed by the reviewing court unless clearly erroneous.

*Smith v. State*, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015) (citations and punctuation omitted). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged

deficiencies." *Strickland,* supra at 697 (IV). "[The Defendant's] burden, though not impossible to carry, is a heavy one." *Butler v. State,* 292 Ga. 400, 405 (3) (738 SE2d 74) (2013).

In the present case, the State's evidence against Crews was, as the trial court opined, "thin." If Crews's parole officer had testified at trial, he could have stated that S. G. may have told him that he had heard that Crews robbed Mr. and Ms. D. R. from a third party. This could have led the jury to weigh the detective's credibility regarding whether S. G. had told the detective that Crews told him that he committed the crimes, or whether S. G. had told the detective that he had only heard from a third party that Crews committed the crimes. However, any benefit that Crews might have obtained from the parole officer's testimony must be compared with the fact that the jury would have also learned that Crews was on parole at the time of the charged offenses. Through the introduction of evidence that Crews had a prior criminal history, testimony from Crews's parole officer might have been more harmful than beneficial to Crews's case. See generally *Strickland*, supra at 700. Crews failed to demonstrate that if the parole officer had testified, there was a reasonable probability that the outcome of the trial would have been more favorable to him. See *Burney*, supra. Due

to Crews's failure to satisfy the trial outcome prong of the *Strickland* test, it is not necessary to examine the other prong. See *Smith*, supra.

2. Second, the State maintains that the trial court did not have jurisdiction to consider the issue of whether Crews's right to a fair trial was violated due to his wearing leg shackles because this Court's remand was only for the trial court to consider Crews's ineffective assistance of counsel claim. When the case was remanded, it was done "to allow appellant to file a motion for new trial raising the issue of the alleged ineffectiveness of trial counsel[.]" The State claims that the trial court lacked jurisdiction to consider Crews's claim that he was denied a fair trial due to the presence of leg shackles.[1] We agree.

> When an appellate court vacates a lower court's judgment and remands for findings of fact and conclusions of law on a specific issue, this does not permit the lower court to reopen the case for other purposes. Instead, the scope of the lower court's authority to act on remand is limited to the specific purpose of making the applicable findings and conclusions.

*Head v. Hill*, 277 Ga. 255, 263 (C) (587 SE2d 613) (2003) (citation and punctuation omitted). As the remand order specified that the trial court was to hold a hearing

---

[1] Of note, Crews did not respond in his response brief to the State's claim that the trial court lacked jurisdiction to review Crews's leg shackles claim.

regarding Crews's claim for ineffective assistance of counsel, the trial court lacked jurisdiction to hear Crews's claim that his rights were violated because he wore leg shackles during trial. See generally *Head*, supra. We reverse the trial court's grant of Crews's motion for new trial in Case No. A17A0672.

3. In the present appeal Crews reiterated his claim from Case No. A09A1921 that he was denied a fair trial because jurors saw him in leg shackles throughout the course of the trial. Crews's claim follows from the trial court's denial of his motion for mistrial.

> Although a defendant has the right to be free of the atmosphere of partiality created by the use of excessive guards or shackles in the courtroom, the mere fact of seeing an indicted accused in custody[,] not in the courtroom, as in the instant case, is not grounds for an automatic mistrial, but is addressed to the sound discretion of the trial court.

*Hill v. State,* 193 Ga. App. 401, 405 (8) (387 SE2d 910) (1989) (citation and punctuation omitted.) We must review the trial court's denial of Crews's motion for mistrial with an abuse of discretion standard. See Id.; *Elliott v. State*, 253 Ga. 417, 422 (5) (320 SE2d 361) (1984).

Here, Crews wore leg shackles from the opening statements through the close of the State's evidence. Prior to Crews walking toward the bench at the close of the State's evidence, neither party nor the trial judge noticed that Crews was in shackles.

After the jurors returned their verdict, the trial judge polled each juror individually to determine if they had observed Crews in shackles and, if so, if it influenced their verdict.[2] One juror testified that she saw him walking to the bathroom with leg shackles on, but stated that it did not influence her verdict, and it was not discussed in the jury room. Another juror testified that he saw Crews in shackles as he was exiting a police vehicle and entering the courthouse. That juror stated that his

[2] Of note, the United States Supreme Court discouraged the use of juror polling regarding any possible prejudice they may have against a criminal defendant due to security precautions taken by the court, stating that "[e]ven though a practice may be inherently prejudicial, jurors will not necessarily be fully conscious of the effect it will have on their attitude toward the accused. This will be especially true when jurors are questioned at the very beginning of proceedings; at that point, they can only speculate on how they will feel after being exposed to a practice daily over the course of a long trial." *Holbrook v. Flynn*, 475 US 560 (570) (III) (A) (106 SCt 1340, 89 LE2d 525) (1986). However, the present matter differs from *Holbrook*, in two important ways. First, the jurors were polled following the issuance of their verdict, and second the security precautions, which were leg shackles in the present matter, were not observed inside the courtroom.

observation did not influence his verdict and it was not discussed in the courtroom. None of the other jurors observed Crews in leg shackles.[3]

"Because, during the transportation of [Crews], a prisoner, it was natural for the police to have him handcuffed for security reasons, and the jury would not have been shocked to see it," and furthermore "because each of the jurors who inadvertently saw the defendant in handcuffs stated that they neither discussed the incident with any other juror nor allowed it to affect their decision, we find that the trial court did not

---

[3] One other juror testified that she observed Crews with his hands behind his back and she "automatically assumed that he was handcuffed", but did not see any handcuffs. She testified that her observation did not influence her verdict. Of note, the parties agreed that Crews was not handcuffed. Another juror saw Crews escorted to the bathroom by a police officer, but she did not observe any restraints. The juror testified that her observation did not influence her verdict.

abuse its discretion in denying [Crews's] motion for mistrial."[4] *Elliott,* supra at 422(5)

(citations and punctuation omitted).

*Judgment reversed. Barnes, P. J., and McMillian, J., concur.*

---

[4] Additionally, Crews claims that the fact that he wore leg shackles throughout the trial constituted ineffective assistance of counsel because his counsel told the trial court that she had no objection to "the manner in which [Crews was] dressed." However, as discussed in section 3, only two jurors saw the leg shackles, neither juror saw the leg shackles in the courtroom, and both testified that seeing Crews in leg shackles did not influence their verdicts. Crews failed to demonstrate that if he had not worn leg shackles at trial, there was a reasonable probability that the outcome of the trial would have been more favorable to him. See *Burney*, supra. Due to Crews's failure to satisfy the trial outcome prong of the *Strickland* test, it is not necessary to examine the other prong. See *Smith*, supra.