S16A0834. WILLIAMS v. THE STATE.
S16A0835. SMITH v. THE STATE.
(794 SE2d 127)

HINES, Presiding Justice.

Gregory Williams and Shauna Smith appeal from their convictions and sentences, rendered at the conclusion of a joint trial, for murder, burglary, and related crimes in connection with the shooting death of Brian Mosely. For the reasons that follow, we affirm in both cases.[1]

Construed to support the verdicts, the evidence established as follows. At 11:01 a.m. on December 3, 2007, police were dispatched to an East Point apartment complex in response to a 911 call reporting shots fired. The first responding officer found the victim, lying face down in the stairwell adjacent to his fourth floor apartment, naked and bleeding from gunshot wounds to his back. A trail of blood led up to the victim's apartment, which had been forcibly entered and ransacked; the shower had been left running, and blood spatter patterns were indicative of a struggle between victim and assailant. The crime scene technician noted bullet holes in the walls and found multiple spent shell casings in the apartment, as well as a projectile that had traversed a wall into a neighboring apartment. The victim died from his gunshot wounds, which the medical examiner concluded had been inflicted at close range. The victim had also sustained multiple blunt force injuries to his head, consistent with having been pistol-whipped, and injuries to his neck, consistent with having been manually choked; these injuries had likely been sustained contemporaneously with the gunshot wounds.

The 911 caller reported that, immediately after he heard the gunshots, he saw three black males exit the apartment complex parking lot in a black Mitsubishi SUV. One of these men wore his hair in dreadlocks.

---

[1] The crimes occurred on December 3, 2007. On May 19, 2009, a Fulton County grand jury indicted both Williams and Smith for malice murder, felony murder while in the commission of the crime of aggravated assault, aggravated assault, burglary, and possession of a firearm during the commission of a felony. The appellants were tried jointly before a jury December 13-20, 2010, and both were found guilty on all counts. On December 20, 2010, the appellants were each sentenced to life imprisonment for malice murder; a consecutive 20-year term for burglary; and a consecutive five-year term for firearm possession. The remaining charges either merged with a crime for which a sentence was entered or were vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). Smith filed a motion for new trial on December 30, 2010, which she amended on December 30, 2011, October 17, 2014, and March 25, 2015. Williams filed a motion for new trial on January 5, 2011, which he amended on January 27, 2015. On April 8, 2015, both motions, as amended, were denied. Williams filed a notice of appeal on April 27, 2015, which he amended on May 22, 2015; Smith filed a notice of appeal on May 7, 2015. The appeals were thereafter docketed as companion appeals to the April 2016 term of this Court. Smith's appeal was orally argued on May 10, 2016; Williams' appeal was submitted for decision on the briefs.

During the investigation, East Point police received a phone call from an anonymous tipster with information about the murder. The caller, whom investigators ultimately identified as Latonja Cojoe, reported that she had been present during a conversation in which Smith, whom Cojoe had known for several years, discussed the murder. Through this conversation, Cojoe learned that Smith had been angry with the victim, whom she had previously dated, for "keying" a vehicle belonging to Smith's then-boyfriend after entering Smith's unlocked home and finding Smith and the boyfriend together. Smith had spent $850 to repair the damaged car and believed the victim was responsible for repaying her. The victim did not reimburse Smith, and Smith thus contacted a woman named Calenthia Honeycutt, who arranged for some men to "set up" the victim. Though Cojoe subsequently signed an affidavit swearing to have no knowledge about the murder, at trial she confirmed that she had made the anonymous call to police but wanted to have no further involvement in the case.

Calenthia Honeycutt had family connections to both Smith and Williams. Honeycutt once had been married to Williams' father and, as of the date of the crimes, Williams and his girlfriend, Erica Henderson, were living with Honeycutt and Honeycutt's then-husband, William Serena. Serena was a cousin of Smith. Though Honeycutt denied having any knowledge about the crimes — and initially denied even being acquainted with Smith, a claim she later retracted — she testified at trial that, at the time of the crimes, Williams had worn his hair in dreadlocks and had ready access to Henderson's black Mitsubishi SUV. Henderson, too, testified that as of the date of the crimes, Williams had his own set of keys to her black Mitsubishi SUV.

Cell phone records reflected 25 phone calls between Smith's cell phone and a cell phone used by Williams on the day of the crimes. These records further showed that, during the rest of that month, from December 4 through 31, 2007, there were a total of only seven phone calls between these two phone numbers, one on December 5 and six on December 31. In addition, the records reflected that Williams' phone "pinged" off various cell towers in East Point between 7:00 a.m. and 11:07 a.m. on the day of the crimes; several of these calls were transmitted from a cell tower located less than a mile from the crime scene, including one phone call at 11:04 a.m. Out of approximately 3,000 phone calls on Williams' phone during the month of December 2007, the 11:04 a.m. call on the day of the crimes was the last call that was transmitted from that cell tower. After the 11:04 a.m. call, Williams' phone "pinged" off an East Point cell tower farther from the crime scene at 11:07 a.m., then a cell tower in southwest

Atlanta at 11:12 a.m., and a cell tower in northwest Atlanta at 11:25 a.m., indicating the phone's movement away from the vicinity of the crime scene in the minutes after the crimes.

During the investigation, Smith confirmed that she had been angry with the victim for failing to repay the $850, although she denied being involved in the murder. Smith also expressed outrage after learning that investigators had questioned Honeycutt about the crimes. After her arrest, Smith initiated a conversation with the lead investigator in the case, Detective Shawn Buchanan, by commenting that he must think she is a heartless person. Detective Buchanan responded by saying he believed she had just made a bad decision, which Smith acknowledged by nodding and saying "yes." Detective Buchanan then stated that $850 was "not worth a person dying over." According to Detective Buchanan, Smith "said she knew and was sorry."

*Case No. S16A0834*

1. In his sole enumeration of error, Williams contends that the evidence was insufficient to support his convictions, noting that the evidence was entirely circumstantial and asserting that such evidence was not such as would exclude every reasonable hypothesis except that of guilt. See, e.g., *Wright v. State*, 274 Ga. 730 (1) (559 SE2d 437) (2002) (conviction based on circumstantial evidence is authorized where evidence excludes every reasonable hypothesis but for that of defendant's guilt). Williams highlights the lack of inculpatory physical evidence and, positing an alternative theory of the crimes, notes that there was evidence that the victim was a drug dealer who had been attempting to broker a marijuana deal the night before the crimes. Williams further assails the cell phone records as insufficient to show anything other than his general proximity to the crime scene, noting that the records could show only a three to five-mile radius in which a cell phone was located at a given time and that they offered no evidence regarding the actual identity of the phone's user at a given time or the content of any given communication.

While we agree that the evidence against Williams was not overwhelming, we nonetheless find it sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Williams was guilty of the crimes of which he was convicted, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), and to exclude all other reasonable hypotheses but for that of Williams' guilt, see *Wright*, 274 Ga. at 731. Testimony from multiple witnesses established that Smith was angry with the victim over the $850 she

believed he owed her, and Smith herself tacitly acknowledged to Detective Buchanan her role in the victim's murder. Evidence undisputedly established a relationship between Smith and Honeycutt and between Honeycutt and Williams, and there was evidence that Smith had contacted Honeycutt about "setting up" the victim. There was evidence that the getaway car was the same model and color as the vehicle Williams routinely drove at the time of the crimes, and Williams fit an eyewitness' physical description of one of the assailants. Most damning are the cell phone records, reflecting 25 phone calls between Williams' and Smith's cell phones on the day of the crimes, most of which occurred in the hours leading up to the crimes and which were transmitted from cell towers in close proximity to the crime scene. The contrast between the 25 calls between the appellants' phones made on the day of the crimes, versus the total of seven calls in the nearly four weeks thereafter, indicates that the appellants were in unusually close contact in the hours leading up to and immediately following the crimes. The records also are indicative that Williams was in the vicinity of the crime scene on the morning of the crimes and, within minutes after the 911 call was made, was traveling away from that area and out of East Point into Atlanta. The records also show that, of the thousands of calls transmitted through Williams' phone in December 2007, not a single one was transmitted from the cell tower closest to the crime scene after 11:04 a.m. on the day of the crime. In short, the quantum and nature of all this circumstantial evidence is sufficient to support the jury's finding of Williams' guilt and to exclude all reasonable hypotheses but for that of Williams' complicity in the crimes. Accordingly, we find Williams' single enumeration of error to be without merit, and we affirm his convictions and sentences.

*Case No. S16A0835*

2. Smith, unlike Williams, does not specifically contend that the evidence was insufficient to support her convictions. We nevertheless have assessed the sufficiency of the evidence against Smith and conclude that it was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that she was guilty of all the crimes of which she was convicted. *Jackson*, 443 U. S. at 315-316; OCGA § 16-2-20 (one who procures another to commit a crime is a party thereto and may be convicted of such crime).

3. In her sole enumeration of error, Smith contends that the trial court committed reversible error by depriving her of her constitutional right to be present during all critical stages of her trial. See, e.g., *Zamora v. State*, 291 Ga. 512, 517-518 (7) (b) (731 SE2d 658)

(2012) (discussing this Court's longstanding recognition of a criminal defendant's right, under the Georgia Constitution, " 'to be present, and see and hear, all the proceedings which are had against him on the trial before the Court' "). Smith's claim arises from her exclusion from an unrecorded bench conference between the trial court and counsel, after jury deliberations had begun, regarding the excusal of one of the jurors. We conclude that Smith acquiesced in the error she now asserts.

The record reflects that, during voir dire on the first day of trial, a Monday, one of the jurors asserted a hardship based on travel plans he had scheduled for the upcoming weekend; at the time, the trial court denied the hardship claim, and this juror was ultimately selected for the jury. The jury began deliberating on that Friday but failed to reach a verdict by the end of that day. Prior to the weekend recess, the juror in question inquired of the trial judge whether the seating of an alternate juror would be possible. This inquiry was made in open court, with the jury and all parties and their counsel present. Counsel thereupon approached the bench and engaged in an unrecorded colloquy with the court. Immediately following this bench conference, the trial court went back on the record and announced its decision, due to the juror's previously disclosed, pre-existing travel plans, to excuse the juror and seat the first alternate in his stead. The trial court instructed the jury that, when it reconvened on the following Monday, it would be required, as a newly constituted jury, to restart its deliberations in their entirety. Smith was present in the courtroom when this announcement was made and expressed no opposition or objection to the trial court's decision at the time.

It was not until nearly four years later that Smith, in her amended motion for new trial, asserted error in connection with the juror's excusal. At the new trial hearing, Smith testified that she had been given no opportunity to participate in the decision to excuse the juror and had never consented to such action. Smith did not call her trial counsel to testify or adduce any other evidence in support of this claim.

Smith correctly asserts that she had the right to be present at the bench conference at which the juror's excusal was discussed. See *Burney v. State*, 299 Ga. 813, 819 (3) (b) (792 SE2d 354) (2016) (right to be present extends to proceedings at which jury composition is addressed); *Zamora*, 291 Ga. at 518. However, the fact that the right existed in these circumstances does not end the analysis, as a defendant is free to waive this right, either personally or by counsel. *Burney*, 299 Ga. at 820; *Zamora*, 291 Ga. at 519. For a waiver by counsel to be binding on the defendant, it must be made either at the defendant's express direction or in open court in the defendant's

presence; if it is not, however, the waiver may be subsequently made effective by the defendant's acquiescence. *Burney*, 299 Ga. at 820; *Zamora*, 291 Ga. at 519. "[A]cquiescence, which is a tacit consent to acts or conditions, 'may occur when counsel makes no objection and a defendant remains silent after he or she is made aware of the proceedings occurring in his or her absence.'" *Burney*, 299 Ga. at 820.

Here, in failing to voice any objection during the trial proceedings to her absence at the bench conference at which the juror excusal was discussed, Smith clearly acquiesced in her trial counsel's waiver of her right to be present at that bench conference. Smith was present in the courtroom while the bench conference was occurring and, though she was not privy to the discussion, she was present during the juror's inquiry before the bench conference and the court's announcement immediately thereafter that, due to the juror's previously disclosed hardship, the juror was being excused and replaced with an alternate. At the time, thus, Smith was not only aware that she had been excluded from participation in the bench conference but also informed as to the nature of and reasons for the decision that was made outside her presence. In remaining silent in the face of this knowledge, Smith acquiesced in her trial counsel's waiver of her presence at the bench conference. See *Burney*, 299 Ga. at 820 (citing cases finding acquiescence); *Zamora*, 291 Ga. at 519-520 (finding acquiescence where defendant was not only aware that bench conferences had taken place in his absence but was also apprised of the nature of the discussions and reason for the court's resulting dismissal of a juror). Accordingly, Smith's enumeration is without merit, and her convictions and sentences must be affirmed.

*Judgments affirmed. All the Justices concur.*

DECIDED NOVEMBER 21, 2016.

*Chaunda Brock*, for appellant (case no. S16A0834).

*Jonathon J. Majeske, Ash S. Joshi, Mark J. Issa*, for appellant (case no. S16A0835).

*Paul L. Howard, Jr.*, District Attorney, *Paige Reese Whitaker, Sheila E. Gallow*, Assistant District Attorneys; *Samuel S. Olens*, Attorney General, *Patricia B. Attaway Burton*, Deputy Attorney General, *Paula K. Smith*, Senior Assistant Attorney General, *Matthew M. Youn*, Assistant Attorney General, for appellee.