**FIRST DIVISION
BARNES, P. J.,
MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 27, 2017**

# In the Court of Appeals of Georgia

A17A1027. BURCH v. THE STATE.

MᴄMɪʟʟɪᴀɴ, Judge.

Jan Michael Burch was indicted, along with co-defendant Kimberly McGinnis,[1] for one count of trafficking in cocaine (OCGA § 16-13-31 (a)), possession of marijuana with intent to distribute (OCGA § 16-13-30 (j)), and possession of a firearm by a convicted felon (OCGA § 16-11-131). Following a jury trial in November 2015, Burch was found guilty of trafficking in cocaine, possession of marijuana, and possession of a firearm by a convicted felon. He was sentenced to a total of 20 years, with the first 10 years to be served in confinement. The trial court

---

[1] McGinnis was also charged with one count of first degree burglary (OCGA § 16-7-1 (b)). Prior to Burch's trial, McGinnis entered a guilty plea to the narcotics charges and was sentenced to twenty years, to serve ten. She is not a party to this appeal.

denied Burch's motion for new trial, as amended, following a hearing. Burch now appeals, asserting (1) the trial court erred in conducting a critical stage of the trial outside of his presence; (2) the trial court erred in admitting evidence of a prior conviction; and (3) that he received ineffective assistance of trial counsel. For the reasons that follow, we must reverse Burch's convictions.

Viewed in the light most favorable to the jury verdict,[2] the record shows that on June 18, 2014 an investigator working with the Gwinnett Metro Task Force[3] was assigned to observe the property at 3991 Lake Pass Lane in Suwanee for the purposes of locating McGinnis, who was a suspect in a burglary committed earlier that day. At approximately 3:00 p.m., he saw McGinnis walk out of the house, take a white plastic bag out of a vehicle, and then go back inside the house. He then alerted other officers that McGinnis had been located. A detective who was also assigned to the Gwinnett Metro Task Force responded to the scene at approximately 5:00 p.m. to conduct a knock and talk. Burch opened the front door, and the detective noticed a strong smell of fresh marijuana emanating from the house.

---

[2] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[3] This task force is comprised of representatives from various law enforcement agencies to work on narcotics crimes within Gwinnett County.

When the detective asked to speak with Burch, Burch stepped outside and sat on the front porch. He asked Burch if McGinnis was inside, and Burch responded that she had not been there all day. The detective then asked Burch if he were to obtain a warrant for McGinnis' arrest, would he be harboring a fugitive inside his house. Burch then became visibly agitated and conceded that McGinnis had been there earlier but claimed that she was no longer inside. At that point, Burch was placed in handcuffs and detained for the officers' safety while they called inside through the door for McGinnis to come outside, which she did after a few moments. Officers then obtained a search warrant for the exterior of the house. Based on positive alerts from a K-9 exterior search, a second search warrant was obtained for the interior of the house.

While executing the interior search warrant, officers discovered a loaded pistol in a dresser drawer near the front door, another handgun inside a dryer, two rifles located in the lower floor of the house, and several types of ammunition, including some near a credit card with Burch's name on it. Officers also found $780 in cash on a table, four cell phones , a firearm holster, two small digital scales, one large digital scale, two boxes of sandwich baggies, a glass marijuana smoking pipe, a total of seven grams of marijuana in various locations in the house, and 167.25 grams of

cocaine with a purity level of 57.7 percent.[4] Officers also located four vehicles at the residence, but found no information that either Burch or McGinnis had full time employment. At some point during the search, the investigator joined Burch where he was being detained in a police vehicle, and without having asked him anything, Burch stated "the only thing [you are] going to find in there is a bowl and a couple of buds."[5]

At trial, the State presented evidence that the two smaller digital scales found in Burch's home are commonly seen in narcotics investigations, whereas the larger scale is generally only found in relation to larger quantities of narcotics on a distribution level. The investigator also explained to the jury that, based on his experience investigating narcotics, there are certain items that indicate someone possesses drugs that are intended for more than just personal use, including scales, multiple cell phones, weapons, the presence of loose money, and sandwich bags in bathrooms and dresser drawers.

---

[4] The detective estimated the street value of the cocaine to be approximately $9,500 to $10,500.

[5] Based on his extensive experience investigating narcotics, the investigator understood a "bowl" to mean a device used with marijuana and "buds" to mean a small amount of the drug.

Burch called McGinnis to testify on his behalf at trial. According to McGinnis, on June 18, 2014, she broke into her cousin's apartment to retrieve $15,000 she claimed he had stolen from her. She was able to locate $1000 in cash that she alleged was hers and decided to also take some cocaine and a gun. After she arrived back at Burch's house[6] with the items, the police began knocking on the door. She then threw the cocaine in the kitchen trash can and put the gun and two bags of weed that she claims belonged to her in the dryer. She acknowledged that she initially denied to officers that she had broken into her cousin's home, but later admitted to breaking into the apartment, although denied taking anything. She admitted at trial that she knew Burch was a convicted drug trafficker but maintained that he had nothing to do with the possession of cocaine. McGinnis also claimed that, at the time of his arrest, Burch was in the process of getting a divorce and some of the property still in the house belonged to his wife, including several guns.[7]

The State then recalled the detective in rebuttal. He testified that he interviewed McGinnis the next day while she was in jail, and she admitted to breaking into her

---

[6] She and Burch had been dating for approximately three years, and she occasionally stayed with him at his house.

[7] She also claimed that one of the guns in the house belonged to Burch's mother.

cousin's apartment to retrieve money. She did not mention taking any cocaine or a firearm at that time. He also testified that he had seen no indication that she ever reported the money that was allegedly stolen from her. At one point when they spoke with her in the jail, she told them "I'll take that." It was his belief that she eventually claimed responsibility for the drugs because she felt remorse over the fact that the only reason law enforcement came to Burch's house that day was to look for her in relation to the burglary report. The detective also testified that despite her subsequent claim that the drugs belonged to her, McGinnis was not able to tell him how much the cocaine weighed, how much she had purchased it for, or how much it was worth. The State also introduced at trial a certified copy of Burch's 1998 conviction for trafficking in cocaine.

1. Although not enumerated as error, we find the evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Burch was guilty of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. In his first enumeration of error, Burch asserts that his right to be present at all stages of the trial was violated when the trial court conducted a portion of the jury selection outside his presence. We are constrained to agree.

6

Jury selection began in this case on November 17, 2015, and carried over into the following morning. On the second day, the trial court began by noting that Burch, along with one of the potential jurors, was not yet present. The trial court also informed counsel that one of the potential jurors had notified the bailiff at the end of the previous day that she was in so much pain from a recent surgery that she did not think she would be able to return. The bailiff told her to remain by her phone and that someone would call her if she had to return. The trial court proposed selecting a jury panel without that juror, and counsel agreed. The trial court then stated that its preference would be to go ahead and instruct the jurors that Burch has contacted his attorney, he is having trouble finding a parking spot, and he will come into the courtroom as soon as he is able to get there. Defense counsel stated, "That'll be fine, Judge." At that point the jury panel was brought in and voir dire resumed after the trial court explained why Burch was not present and assuring them that "[i]t's all known to the Court and agreed to with the attorneys in terms of going ahead and starting without him actually being here." The State then began its examination of prospective juror number 36.[8]

---

[8] The transcript does not indicate at which point Burch entered the courtroom, but Burch later testified at his motion for new trial hearing that he arrived 20-30 minutes late, "tops."

At the new trial hearing, Burch's trial counsel testified that Burch had called him that morning and told him he was circling the parking lot looking for a parking spot. He told his client to get there as soon as he could, and Burch arrived 10-15 minutes late. He testified that he did not object to moving forward without Burch because they were not up to the point where he would discuss with Burch who should be put on the jury panel or not.

> Embodied in the constitutional right to the courts under Art. I, Sec. I, Par. XII of the Georgia Constitution of 1983 is the right of the criminal defendant to be present at all proceedings had against him at the trial of his case. The right to be present attaches at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure. This Court has determined that a critical stage in a criminal prosecution is one in which a defendant's rights may be lost, defenses waived, privileges claimed or waived, or one in which the outcome of the case is substantially affected in some other way.

(Citations and punctuation omitted.) *Dawson v. State*, 283 Ga. 315, 321-22 (5) (658 SE2d 755) (2008). It is well established that a defendant's right to be present at every stage of the trial extends to selection of the jury. See *Sammons v. State*, 279 Ga. 386, 387 (2), n.7 (612 SE2d 785) (2005) (citing cases).

However, the State argues that Burch waived his right to be present when he voluntarily absented himself from trial after he clearly knew the proceedings had begun. It is generally true that if a criminal defendant is free on bond, such as Burch was here, he may waive his right to be present by his voluntary absence from trial. See *Hill v. State*, 290 Ga. 493, 495 (2) (722 SE2d 708) (2012) (finding that defendant voluntarily absented himself from court since he was free on bail and knew proceedings had begun and defendant therefore waived his right to be present at trial). However, in *Pollard v. State*, 175 Ga. App. 269, 270 (333 SE2d 152) (1985), this Court adopted the rule that "for Sixth Amendment waiver purposes, trial begins when jeopardy attaches, and thereafter a defendant can waive his constitutional right of confrontation by voluntarily absenting himself from the proceeding," and that "in the absence of jeopardy attaching, the waiver principles are inapplicable." Jeopardy attaches when, "in a court of competent jurisdiction with a sufficient indictment, [the defendant] has been arraigned, has pled and a jury has been impaneled and sworn." Id.

The record in this case clearly shows that the jury had not been impaneled and sworn before Burch absented himself from the proceedings, so jeopardy had not yet attached. Thus, as in *Pollard* and its progeny, waiver principles are inapplicable in

9

this case. See, e.g., *Stacey v. State*, 254 Ga. App. 461, 462 (1) (562 SE2d 806) (2002) (in the absence of jeopardy attaching, waiver principles are inapplicable and defendant is entitled to a new trial). See also *LaGon v. State*, 334 Ga. App. 14, 23-24 (3) (778 SE2d 32) (2015) (when a criminal defendant "free on bond or on his own recognizance fails to appear at the start of trial, the trial court cannot try the defendant in absentia; instead the trial court must delay the start of trial and rely on other sanctions such as bench warrants and bond forfeitures") (citations omitted).

The State maintains, nonetheless, that under Georgia law, counsel may waive his client's right to be present if the waiver is made either in the defendant's presence or by his express authority, or if the waiver is subsequently acquiesced in by him. See *Heywood v. State*, 292 Ga. 771, 775 (3) (743 SE2d 12) (2013). And, according to the State, Burch acquiesced in his counsel's waiver when he arrived during voir dire and proceeded without objecting.

Under *Pollard*, the State is incorrect that Burch may waive his right to be present merely by his voluntary absence from the proceedings, and the record does not show that the attorney's waiver was in Burch's presence or by his express authority. However, we note that this Court has previously found that a defendant can acquiesce in his counsel's waiver of his right to be present during voir dire. See

10

*Winfield v. State*, 210 Ga. App. 849, 851 (1) (437 SE2d 849) (1993). We find *Winfield* to be distinguishable and the issue of acquiescence controlled by *Ward v. State*, 288 Ga. 641, 646 (4) (706 SE2d 430) (2011). In *Winfield*, the defendant notified his counsel on the first day of trial that he was experiencing car trouble and would be arriving late. The trial court then proceeded with voir dire without objection from defendant's counsel. The defendant eventually arrived during voir dire of the fourth panel of prospective jurors and participated in the selection of the jury without objection. We found that the defendant acquiesced in his counsel's apparent waiver when he failed to object to voir dire having proceeded in his absence and distinguished the case from *Pollard*, where the defendant absented himself before jeopardy attached and never returned. Id. at 851 (1).

In contrast, in *Ward*, our Supreme Court held that the co-defendants had not knowingly acquiesced in a waiver on the part of their attorneys to the dismissal of a juror because the co-defendants were not informed that the juror had been dismissed ex parte in their absence. *Ward*, 288 Ga. at 646 (4). Acquiescence "means a tacit consent to acts or conditions, and implies a knowledge of those things which are acquiesced in. One cannot acquiesce in a wrong while ignorant that it had been committed." Id. Here, it is not clear from the record when Burch entered the

11

proceedings, but what is clear is that in his absence the trial court discussed with counsel about excusing a juror and eventually released her from returning to court. Burch testified at his motion for new trial hearing that he was not aware that the juror had been excused, and his trial counsel likewise testified that he could not recall notifying Burch of that fact. Accordingly, we conclude that Burch is entitled to a new trial because his right to be present was violated. See *Ward,* 288 Ga. at 645 (4) (proceedings at which the jury composition is selected or changed are critical stages at which the defendant is entitled to be present).

3. We do not reach Burch's remaining enumerations of error, as the alleged errors complained of are not likely to reoccur upon any retrial of the case.

*Judgment reversed. Barnes, P. J., and Mercier, J., concur*.