**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 29, 2018**

# In the Court of Appeals of Georgia

A18A0980. JOHNSON v. THE STATE.

BROWN, Judge.

After a jury trial, Darius Johnson was found guilty of armed robbery and hijacking a motor vehicle in connection with the robbery of a pizza deliveryman. He appeals the denial of his motion for new trial, contending that the trial court erred by allowing a record of his text messages into evidence, by allowing the record of his text messages to go back with the jury during deliberations, and in failing to charge the jury on robbery as a lesser included offense of armed robbery. He also argues that his right to be present at critical stages of his trial was violated by his absence from bench conferences and that his trial counsel rendered ineffective assistance. For the reasons explained below, we reverse.

Viewed in the light most favorable to the jury's verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence adduced at trial shows that on the night of March 3, 2012, the victim, a deliveryman for Domino's Pizza, was approaching a home to make a delivery when the defendant and another man rounded the side of the house and demanded that the victim "drop everything." While one of the men held a gun in his face, the victim gave up his money, cell phone, and car keys along with the pizza. A third, and possibly fourth, man then ran out from the other side of the house. After the defendant and the other men fled the scene in the victim's car, the victim ran to a gas station and contacted police. The victim provided the responding officer with the phone number that had placed the delivery order. The police obtained records associated with that phone number and learned that it belonged to the defendant.

When the Dekalb County Police Department later recovered the victim's car, they discovered a wallet with a driver's license belonging to Derrick Phillips in the passenger seat. The police questioned Derrick Phillips along with his older brother, Antonio Phillips. Both initially denied any involvement, but Antonio Phillips later

confessed to being one of the men who robbed the victim and implicated the defendant and co-defendant Brandon Johnson.[1]

The defendant was indicted on one count of armed robbery, one count of hijacking a motor vehicle, and one count of possession of a firearm during the commission of a felony. Following a joint trial with his co-defendant, the jury found the defendant guilty of armed robbery and hijacking a motor vehicle and not guilty of possession of a firearm during the commission of a felony.[2]

1. We first address the defendant's fourth enumeration of error, wherein he argues that his absence from bench conferences throughout the trial violated his right to be present during all stages of his trial. We agree.

We first note that the defendant has not cited to the transcript for a single, specific bench conference from which he was excluded. Nevertheless, this Court has reviewed the entire transcript for such bench conferences, and the record shows that

---

[1] Antonio Phillips was indicted on one count of armed robbery, one count of hijacking a motor vehicle, and one count of possession of a firearm during the commission of a felony. In a negotiated plea deal, he pled guilty to robbery, theft by taking, and possession of a firearm during the commission of a felony. As part of the deal, Antonio Phillips agreed to testify truthfully against his co-defendants.

[2] The co-defendant also was indicted on one count of armed robbery, one count of hijacking a motor vehicle, and one count of possession of a firearm during the commission of a felony. The jury found him not guilty on all three counts.

the defendant was excluded from at least 44 bench conferences throughout the proceedings.

"Embodied within the constitutional right to the courts is a criminal defendant's right to be present and see and hear all the proceedings which are had against him on the trial before the [c]ourt." (Citation and punctuation omitted.) *Brewner v. State*, 302 Ga. 6, 9 (II) (804 SE2d 94) (2017). This right "attaches at any stage of a criminal proceeding that is critical to its outcome if the defendant's presence would contribute to the fairness of the procedure." (Citation omitted.) *Burch v. State*, 343 Ga. App. 474, 477 (2) (806 SE2d 863) (2017). However, it "does not extend to situations where the defendant's presence would be useless – for example, during bench conferences dealing with logistical or procedural matters or questions of law about which a defendant presumably has no knowledge." (Citation omitted.) *Gillespie v. State*, 333 Ga. App. 565, 567 (774 SE2d 255) (2015). Because "[a] defendant's presence at bench conferences dealing with such topics bears no relation, reasonably substantial, to the fullness of his opportunity to defend against the charge," his "right to be present is not violated by his absence from such bench conferences." (Citations and punctuation omitted.) *Heywood v. State*, 292 Ga. 771, 774 (3) (743 SE2d 12) (2013).

(a) All transcribed bench conferences during the actual *trial* involved either legal arguments regarding objections, evidentiary issues, proper trial procedure, or logistical matters such as when to take breaks in the proceedings. Accordingly, the defendant's absence from these discussions did not violate his constitutional right to be present. See *Parks v. State*, 275 Ga. 320, 324-325 (3) (565 SE2d 447) (2002).

(b) Turning to the bench conferences held during jury selection, we note that while the entirety of jury selection was recorded and transcribed, bench conferences during jury selection were not recorded.[3] The first such conference occurred on the morning of jury selection. When the jury broke for lunch, the following transpired:

> [COUNSEL FOR DEFENDANT]: Judge, would we – I don't know how the court wants to handle this, but when we do approach the bench, I believe the court instructed that we will put on the record what was said. Do we want to do that now since we approached earlier?
> THE COURT: Sure. What I have so far is the State asked to approach, and what we addressed was first [counsel for co-defendant] and you all – and I just paraphrased – commenting on the questions that he asked. I believe that was in reference to the question about whether the fact that the defendants were African-American, would that affect your ability to

---

[3] In one of the defendant's other enumerations of error, he contends that trial counsel was ineffective for failing to ensure that jury selection was recorded. He does not assert that counsel failed to ensure that bench conferences were recorded. Instead, he mistakenly asserts that "[t]he record only reflects that jury selection was had." To the extent this enumeration can be construed to claim error for the partial recordation of jury selection, we find that it is rendered moot by our holding in Division (1) (b), infra.

be fair and impartial. And I believe the comment was, this is a very important question. So, Mr. Howard, was that the substance of your question?

[THE STATE]: Yes, your Honor.

THE COURT: Do you want to address that?

. . .

THE COURT: And there was also an objection that was made in reference to asking two questions is what I wrote down. And I believe that was in reference to the question about whether or not if the defendant chose not to testify, would they hold that against him. And then there was a question that was asked while the jurors were responding to that question, do you think the defendant needs to testify. Is that the substance of your objection?

. . .

THE COURT: Okay. And then there was lastly a question about setting aside their opinions about punishment/guilt. What I indicated was that I believe the substance of the question was in reference to whether they could listen to the evidence and listen to the instructions of the court and render their decision based solely on those two things. Is there anything else we need to address in reference to that?

[COUNSEL FOR CO-DEFENDANT]: No, your Honor.

[COUNSEL FOR DEFENDANT]: Judge, I just wanted that to be on the record since that was a conversation that was held at the bench and [defendant] was not present at the bench.

COURT: Okay.

[COUNSEL FOR DEFENDANT]: I just wanted to make sure that that was on the record.

THE COURT: And what I indicated was that I don't normally have defendants, especially a defendant who is in custody, approach the bench whenever we have bench conferences. What I will do is make as many notes as I possibly can and put whatever objections or discussions we have at the bench on the record. If there is something else that you want to say to supplement, then that's fine. But I'm not comfortable with having a defendant, especially one that's in custody, considering that we have right now four lawyers and two defendants – well, six lawyers

6

including the attorneys from the State – six lawyers and two defendants, one of whom is in custody. And I right now have one deputy in the courtroom. So I'm not comfortable having everybody approaching. So we will put whatever discussions we have at the bench on the record at the appropriate time.[4]

It is clear from this colloquy that the trial court's procedure for handling bench conferences already had been brought up and discussed, but this earlier conversation is not in the transcript. We presume that it was discussed in the course of one of the first bench conferences.

Before voir dire began, the trial court gave the following instruction to the attorneys:

And because we have started so late, if you have a juror that stands up and they have a real hardship that is truly a legal hardship or something you all know – the State knows, generally, what I will excuse people for, but let's not go into a whole lot of conversation after that. Let's ask the hardship question first. If you have a question about whether the hardship qualifies, then just ask to approach, so that we don't use a whole lot of time going through jurors that we're not going to use

---

[4] While we recognize the trial judge's concern and reasoning for creating this procedure, a better practice, which also addresses this concern, would be to obtain a voluntary waiver from the defendant on the record. If the defendant does not wish to waive his or her right to be present, the trial judge may need to excuse the jury to address certain matters outside its hearing, but in the defendant's presence.

anyway. And again, if there is a question about whether or not the person should be struck for cause, I would rather you just approach and let's address it at the bench rather than going through asking a whole lot of questions of jurors that are going to be excused.

Thirteen bench conferences took place during the voir dire of potential jurors 5, 17, 25, 26, 28, 35, 37, 39, 45, and 46. The trial judge, counsel for the State, counsel for co-defendant, and counsel for the defendant were the only persons present at these discussions. When voir dire of all potential jurors concluded, the trial court asked for any motions to strike for cause. Potential jurors 25, 26, 37, and 45 were thereafter struck for cause for hardship reasons. Juror 39 was struck for cause based on his intimation that he believed the burden of proof was on the defendant and his doubt that he could be impartial. After the jury was selected and released for the day, the following transpired in open court:

> THE COURT: There were a couple of bench conferences this afternoon, but I think they all pertain to questions about whether or not a juror would be struck for cause. Is there anything that anybody needs to put on the record in reference to any of these bench conferences we had?
> [COUNSEL FOR DEFENDANT]: Judge, I would just renew that [defendant] didn't waive any rights or anything by not approaching. I just wanted to make it clear.
> THE COURT: Okay. Is there anything that we need to address in [] reference to the *specifics* of the bench conferences?
> [COUNSEL FOR DEFENDANT]: I don't believe so. I believe that the court did go through what was addressed.

THE COURT: All right. Is there anything we need to address in reference to the bench conferences? I need for you all to say either yes or no on the record.

[COUNSEL FOR CO-DEFENDANT]: No, your honor.

[COUNSEL FOR CO-DEFENDANT]: No.

THE COURT: Okay. All right.

[COUNSEL FOR DEFENDANT]: No, your honor.

THE COURT: Going forward, I need for you to say yes or no on the record. Okay?

[COUNSEL FOR CO-DEFENDANT]: Yes, your honor.

[COUNSEL FOR DEFENDANT]: Yes, your honor.

(Emphasis supplied.)

It is well-established that "proceedings at which the jury composition is selected or changed are critical stages at which the defendant is entitled to be present." (Citations and punctuation omitted.) *Zamora v. State*, 291 Ga. 512, 518 (7) (b) (731 SE2d 658) (2012). Accord *Smith v. State*, 298 Ga. 406, 409 (2) (782 SE2d 269) (2016). It follows that, here, the defendant had the right to be present at these bench conferences discussing whether a potential juror would be struck for cause. See *Williams v. State*, 300 Ga. 161, 165 (3) (794 SE2d 127) (2016) (recognizing that, although defendant was present when juror asked to be excused for hardship and when trial court announced it had excused juror for that reason, defendant had a right to be present during the bench conference at which juror's excusal was discussed); *Smith*, supra, 298 Ga. at 409 (2) (recognizing that, although defendant was present for

9

the factual development of the reason for juror's removal, he had a right to be present when counsel presented legal argument and trial court excused juror); *Heywood*, supra, 292 Ga. at 773-775 (3) (exclusion of defendant from bench conference discussion of whether to replace prospective jurors was improper); *Ramirez v. State*, 345 Ga. App. 611, 616 (2) (814 SE2d 751) (2018) (recognizing defendant's right to be present at a bench conference where the topic of striking a potential juror was discussed); *Gillespie*, supra, 333 Ga. App. at 568-569 (1) (a) (improper to exclude defendant from bench conferences during which the parties discussed strikes for cause and excused some potential jurors).

Nonetheless, the State contends that these bench conferences addressed either courtroom logistics or legal arguments to which the defendant could not have meaningfully contributed. We disagree. As discussed above, it is true that a defendant's right to be present does not extend to bench conferences on legal or logistical matters. *Heywood*, supra, 292 Ga. at 774 (3). While the at-issue bench conferences are unrecorded, it is clear from the record that at least some of the bench conferences did not consist of logistical or entirely legal issues. Prior to jury selection, the trial court instructed the attorneys to approach the bench "if there is a question about whether or not the person should be struck for cause." Subsequently,

10

when the voir dire of certain potential jurors indicated a possible hardship, the attorneys would approach the bench for a discussion. When the bench conference concluded, questioning of the potential juror's hardship would either resume or counsel would move on to the next juror, presumably based on the court's indication during the bench conference of whether it would strike the juror for cause. In bringing up Juror 39 to strike, the State stated "39, Your Honor, is the cab driver who was pretty clear – was so clear that your honor called us to the bench to discuss his bias." The trial court later confirms on the record that the bench conferences that day "all pertain[ed] to questions about whether or not a juror would be struck for cause." The question of whether to excuse a prospective juror for hardship reasons, or when the juror's impartiality is called into question, is a discretionary one and requires a factual showing of cause. OCGA § 15-12-1.1; OCGA § 15-12-164; accord *Gillespie*, supra, 333 Ga. App. at 569 (1) (a). Thus, we cannot conclude that the defendant would not have made a meaningful contribution to the discussion of whether to excuse these potential jurors. See id. at 568-569 (1) (a). See also *Goodrum v. State*, 303 Ga. 414, 419 (812 SE2d 220) (2018) (Nahmias, J., concurring) ("this Court's precedents to date have not drawn a distinction between factual and legal issues with regard to a defendant's right to be present during discussions about a juror's removal").

11

Our conclusion that it was improper to exclude the defendant from these bench conferences does not conclude our inquiry, however. "[T]he right to be present belongs to the defendant, and he is free to relinquish it if he so chooses." (Citation and punctuation omitted.) *Burney v. State*, 299 Ga. 813, 820 (3) (b) (792 SE2d 354) (2016). A defendant waives his right to be present "if [he] personally waives it in court; if counsel waives it at the defendant's express direction; if counsel waives it in open court while the defendant is present; or if counsel waives it and the defendant subsequently acquiesces in the waiver. [Cit.]" Id. And while "[defendant] bears the burden of showing that he was denied the right to be present at bench conferences, . . . the State bears the burden of showing that [defendant] waived that right. [Cit.]" *Gillespie*, supra, 333 Ga. App. at 572 (2) (a). See also *McKinney v. State*, 251 Ga. App. 896, 901 (5) (555 SE2d 468) (2001). In its brief on appeal, the State makes no argument with regard to waiver or acquiescence.

The record shows neither a waiver by the defendant himself nor an express direction for counsel to waive the right on the defendant's behalf. Thus, we turn to whether the defendant acquiesced in a waiver by his counsel. "Acquiescence, which is a tacit consent to acts or conditions, may occur when counsel makes no objection and a defendant remains silent after he or she is made aware of the proceedings

12

occurring in his or her absence." (Citation and punctuation omitted.) *Williams*, supra, 300 Ga. at 166 (3). It "implies a knowledge of those things which are acquiesced in, as one can not acquiesce in a wrong while ignorant that it has been committed." (Citation and punctuation omitted.) *Burney*, supra, 299 Ga. at 820 (3) (b).

Our Supreme Court has made clear that a defendant's failure to voice any objection to his exclusion from a bench conference after the trial court has advised those in the courtroom, including the defendant, about the topic of discussion constitutes acquiescence. See, e.g., *Heywood*, supra, 292 Ga. at 775 (3). In *Murphy v. State*, 299 Ga. 238, 241-242 (2) (787 SE2d 721) (2016), the Supreme Court held that the defendant had acquiesced in her absence from bench conferences discussing motions to strike potential jurors. The defendant was in the courtroom (1) during the bench conferences; (2) at the conclusion of *each* conference when the trial court asked for motions to strike members of the panel that had just been questioned; (3) when counsel stated their reasons for wanting to strike a juror for cause or their objection to opposing counsel's motion to strike; and (4) when the trial court announced its ruling. Id. at 242 (2). At no point did the defendant voice an objection to her absence from the conferences, either directly or through counsel. Id.

In *Williams*, the defendant was excluded from a bench conference at which a juror's excusal was discussed. 300 Ga. at 165 (3). The Supreme Court held that the defendant had acquiesced in her trial counsel's waiver of her right to be present in the conference. Id. at 166 (3). The defendant was present in the courtroom during the bench conference, during the inquiry of the juror before the bench conference, and when the trial court announced *immediately after* the bench conference that, due to the juror's previously disclosed hardship, the juror was being excused. Id. Thus, the defendant was aware she had been excluded from participating in the bench conference and was "also informed as to the nature of and reasons for the decision that was made outside her presence. In remaining silent in the face of this knowledge, [the defendant] acquiesced in her trial counsel's waiver of her presence at the bench conference." Id.

Turning to the case at hand, the record indicates that an initial discussion of the trial court's rule excluding the defendant from bench conferences was held off the record. Several references are made to this discussion, including defense counsel's renewal of a prior, off-the-record objection, which the trial court acknowledged.[5]

---

[5] In its brief on appeal, the State admits that "at the beginning of trial," the defendant's trial counsel requested that the defendant be present at bench conferences.

14

Similar to *Murphy* and *Williams*, the defendant was in the courtroom at the time the bench conferences took place; he was present for the individual voir dire of each of the jurors preceding the bench conferences; he was present when the trial court, following voir dire of all potential jurors, asked for motions to strike; he was present when counsel gave their reasons for or objections to striking a potential juror; and he was present when the trial court announced its rulings. However, unlike the cases discussed above, here, the defendant did not remain silent in the face of this knowledge. To the contrary, at the time the defendant would have been aware of what was actually occurring during the bench conferences — that is to say after voir dire had concluded, the jurors were struck for cause, and the trial court announced in open court what was discussed during the bench conferences — his counsel expressed, on the record, that the defendant was not waiving his right to be present by not being present during the bench conferences. See *Wiggins v. State*, 338 Ga. App. 273, 280 (4) (787 SE2d 357) (2016) (objection raised and ruled on in off-the-record bench conference, but later placed on the record was sufficiently preserved to address the merits on appeal). Thus, the defendant could not have acquiesced in counsel's waiver of his presence at the bench conferences when counsel made no such waiver. Based

15

on the particular facts and circumstances of this case, we cannot say that the State has met its burden of showing that the defendant waived his right to be present.

We disagree with the dissent's proposal to affirm based upon a conclusion that the defendant acquiesced in the trial court's procedure to exclude him from bench conferences in violation of his constitutional right to be present. The State admits in its brief before this Court that the defendant's "trial attorney did request his presence at the conferences at the beginning of trial." In light of this candid admission, the State understandably omitted from its brief any argument that the defendant acquiesced. While a more complete record certainly would have made for a more clear-cut outcome in this case, the State's admission in judicio,[6] along with the

---

[6] See OCGA § 24-14-26 (b) (7) (estoppel by admission in judicio); *Barnett v. Fullard*, 306 Ga. App. 148, 153 (3) (b), n. 4 (701 SE2d 608) (2010) (acknowledgment of fact in appellate brief "constitutes a binding admission in judicio"). Of course, the only record citation to which the State can refer is the on-the-record *renewal* of the off-the-record request that the defendant be allowed to exercise his right to be present and defense counsel's effort to make clear on the record that the defendant had not waived his right to be present by not approaching during the bench conferences. And the dissent's effort to conclude that defense counsel's express renewal of the previous objection is the true subject of the State's admission that defense counsel "did request his presence at the conferences at the *beginning of trial*" falls short. (Emphasis supplied.) In response to the trial court's request to place anything on the record with regard to bench conferences, defense counsel stated, "I would just *renew* that [the defendant] didn't waive any rights or anything by not approaching. I just wanted to make it clear." (Emphasis supplied.) While this renewal took place before opening statements and the first witness as pointed out by the dissent, it does not logically

16

evidence that *is* a part of the record, including defense counsel's on-the-record reference to an earlier, off-the-record objection that was also acknowledged by the trial court on the record, tips the balance in favor of a conclusion that the State failed to meet its burden of proving that the defendant acquiesced to his counsel's purported waiver of his right to be present under these circumstances. See *Gillespie*, supra, 333 Ga. App. at 572 (2) (a). With the objection thus adequately preserved, we should not construe defense counsel's conduct in *complying* with the trial court's mandated procedure as a waiver of the defendant's constitutional right to be present.

The denial of the right to be present guaranteed by the Georgia Constitution is not subject to harmless error review on direct appeal. *Gillespie*, 333 Ga. App. at 567. Instead, a violation is presumed to be prejudicial. Id. Accordingly, the defendant's conviction must be reversed, and he is entitled to a new trial. See *Ward v. State*, 288 Ga. 641, 646 (4) (706 SE2d 430) (2011) ("absent a valid waiver, violation of the right

---

correspond with the State's admission in judicio that defense counsel "did *request* his presence at the conferences at the beginning of trial." (Emphasis supplied.) There was no request for the defendant's presence in the renewed objection, and defense counsel would not have made such a request for the first time after voir dire had been concluded. The only reasonable conclusion to draw from the State's admission in judicio is that the State's record citation refers to a renewed on-the-record objection of a previous off-the-record objection that has been acknowledged by the State in its brief, as well as the trial court on the record.

17

to be present triggers reversal and remand for a new trial whenever the issue is properly raised on direct appeal") (Citations omitted). Because the defendant is entitled to a new trial, we will now examine those enumerations raising issues likely to recur on retrial.[7]

2. The defendant asserts that the text messages from his cell phone were not properly authenticated and should have been excluded as inadmissible hearsay.[8] In addition to a log of incoming and outgoing calls, the phone records contained the content of text messages both sent and received by the defendant's cell phone number.

(a) The defendant first argues that the text messages were not properly authenticated. "The requirement of authentication or identification as a condition precedent to admissibility shall be satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." OCGA § 24-9-901 (a). Authentication is "the means by which a writing is shown to be in fact what it

---

[7] We do not address the defendant's enumeration based on ineffective assistance of his trial counsel.

[8] The defendant's enumeration of error only refers to the trial court's error in admitting the content of the *incoming* text messages, but in his brief he argues as to the admissibility of both outgoing and incoming text messages.

18

purports to be in order to introduce it in evidence." (Citation and punctuation omitted.) *Consolidated Freightways Corp. v. Synchroflo, Inc.*, 164 Ga. App. 275, 277 (1) (294 SE2d 643) (1982). "The party proffering the evidence must present sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be. Once that prima facie case is established, the evidence is admitted and the ultimate question of authenticity is decided by the jury." (Citations and punctuation omitted.) *Smith v. State*, 300 Ga. 538, 541 (2) (b) (796 SE2d 666) (2017).

To authenticate the text messages, the State needed only to produce "evidence sufficient to support a finding" that the messages were actually sent and received by the defendant. OCGA § 24-9-901 (a). This could "be achieved through many means, including, but not limited to: testimony of a witness with knowledge that a matter is what it is claimed to be . . . and appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." (Citations and punctuation omitted.) *Smith*, supra, 300 Ga. at 540-541 (2) (b).

Here, the phone records were accompanied by a declaration from a T-Mobile-Metro PCS records custodian certifying that (1) the records produced were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; (2) the records were kept

19

in the course of regularly conducted business activity; and (3) the records were made by the regularly conducted business activity as a regular practice. Additionally, a records custodian at T-Mobile-Metro PCS testified at trial regarding text messages and phone calls made from the phone number associated with the defendant's account. The custodian testified that he is familiar with how T-Mobile-Metro PCS keeps records of text messages and that as a text message is sent or received from a phone number, a cell tower transmits the information to the cellular device, and the information is automatically downloaded into a centralized database. This testimony sufficiently authenticated the text messages as ones sent to and from the defendant's assigned phone number. See *United States v. Carr*, No. 14–10012, at \*876 (III) (A) (11th Cir. April 7, 2015). To the extent the defendant argues that the text messages "could not be authenticated as actually being from [him]," the messages themselves contained sufficient circumstantial evidence tending to show that the defendant was the one who sent them. The sender of the outgoing text messages self-identified himself as "Woo" and "Darius." Multiple witnesses testified that the defendant often went by the nickname, "Woo."

(b) Next, the defendant argues that the text messages should have been excluded as inadmissible hearsay. Hearsay is defined as "a statement, other than one

20

made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." OCGA § 24-8-801 (c).

In a pre-trial hearing, the trial court admitted the records pursuant to the business record exception to the hearsay rule. While trial counsel for the defendant objected to the content of the text messages within the records as a "second layer" of hearsay, the trial court did not recognize the double hearsay issue, see OCGA § 24-8-805, and instead ruled that "the State has established that through the business records exception that these phone records and the corresponding text messages are admissible."

(i) In its order denying the defendant's motion for new trial, the trial court held for the first time that the outgoing text messages were admissible as admissions by a party opponent. We agree. OCGA § 24-8-801 (d) (2) (A) provides that "[a]dmissions shall not be excluded by the hearsay rule. An admission is a statement offered against a party which is . . . [t]he party's own statement." As statements made by the defendant and offered against him, the outgoing text messages were admissible as admissions by a party opponent. See *Glispie v. State*, 300 Ga. 128, 131 (1) (793 SE2d 381) (2016) (holding that defendant's outgoing text messages were admissible as admissions pursuant to OCGA § 24-8-801 (d) (2) (A)).

21

(ii) As to the incoming texts, the trial court's conclusion in its order denying the defendant's motion for new trial is only partially accurate:

> The text messages sent by defendant were offered by the State as proof of 1) defendant's identity as the owner and user of the phone, and 2) defendant's participation in the armed robbery. . . The State maintained that the incoming messages were not admitted for the truth of the matter asserted, therefore non-hearsay, but merely for context to defendant's inculpatory admissions. Even assuming the incoming messages were inadmissible hearsay, however, this Court specifically finds that the incoming messages were not inculpatory of defendant and were harmless.

We agree that some of the incoming text messages may be admissible to provide context to outgoing text messages that are admissible as admissions. See *United States v. Osborne*, No. 15-14283, at *654-655 (II) (A) (11th Cir. 2017) (third-party's incoming texts such as "yeah" and "ight bra" admissible to give context to the defendant's outgoing text messages because "they were not admitted for the truth of the matter asserted — particularly because they do not really assert anything"); see also *Jones v. State*, 339 Ga. App. 95, 101-103 (2) (791 SE2d 625) (2016). However, a blanket admission of *all* the incoming text messages as "context" would be in error. Statements by a non-defendant are admissible to give context to the defendant's

22

alleged statements when the non-defendant's statements are *non-hearsay* because they are "(1) non-assertive statements that are incapable of being true or false or (2) statements that are indisputably false. In both cases, [the non-defendant's] out-of-court declarations [are] offered only to show their effect on the listener: [here, the defendant]." *United States v. Rivera*, 780 F3d 1084, 1092 (III) (A) (2) (11th Cir. 2015). Thus, an incoming text message is admissible as context to the extent it is non-hearsay offered to prove its effect on the person receiving the message. Accordingly, upon retrial, the trial court should examine the text message exchanges the State wishes to introduce into evidence in light of the State's purported purpose in introducing them, and make an individualized determination as to the admissibility of the incoming texts.

3. The defendant next contends that the trial court erred in allowing a redacted record of his text messages to go back with the jury during deliberations in violation of the continuing witness rule. The defendant objected to the records going out to the jury at the time the cell phone records were admitted, but did not object at the time the redacted record went back with the jury for deliberations. Thus, his claim of error is waived. See *Varner v. State*, 297 Ga. App. 799, 805 (4) (678 SE2d 515) (2009). Assuming arguendo that plain error-review applies under these circumstances, we

23

conclude that the trial court did not commit plain error by allowing the record to go back with the jury.

> In Georgia, the continuing witness objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once. The types of documents that have been held subject to the rule include affidavits, depositions, written confessions, statements, and dying declarations.

(Citations and punctuation omitted.) *Davis v. State*, 285 Ga. 343, 348 (8) (676 SE2d 215) (2009). But here, the record of text messages constitutes "original documentary evidence" of the defendant's communications with others about the robbery. Id. See also *Foster v. State*, 294 Ga. 383, 385 (5) (754 SE2d 33) (2014) (affirming admission of defendant's letter to accomplice as original documentary evidence); *Young v. State*, 292 Ga. 443, 446 (3) (b) (738 SE2d 575) (2013) (because informant's letter to district attorney was admissible as original documentary evidence, counsel was not deficient in failing to object when letter went out with jury); *Varner*, supra, 297 Ga. App. at 805 (concluding that defendant's letter to his accomplice was not "written testimony, but instead constituted original documentary evidence, circumstantial in nature, of

24

[defendant's] involvement in the crime at issue"). Accordingly, it was not error for the record to go out with the jury.

4. The defendant contends that the trial court erred in failing to charge the jury on robbery as a lesser included offense of armed robbery. He avers that the charge was authorized because "[t]here was ample evidence that Antonio Phillips gave a statement saying . . . defendant never had a gun."

> Where the state's evidence establishes all of the elements of an offense and there is no evidence raising the lesser offense, there is no error in failing to give a charge on the lesser offense. Where a case contains some evidence, no matter slight, that shows that the defendant committed a lesser offense, then the court should charge the jury on that offense.

(Citation, punctuation, and footnote omitted.) *Rainly v. State*, 307 Ga. App. 467, 479 (11) (705 SE2d 246) (2010). The defendant misconstrues Antonio Phillips' statement to support his claim for a charge on the lesser included offense. In his written statement to police at the time of his arrest, Antonio Phillips states that the defendant robbed the victim with a "black toy gun."[9] And pursuant to OCGA § 16-8-41 (a), a

---

[9] Both the victim and Antonio Phillips testified at trial that a gun was used to effectuate the robbery.

25

person commits armed robbery when "with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or *any replica, article or device having the appearance of such weapon.*" (Emphasis supplied.) See also *Price v. State*, 289 Ga. App. 763, 764-765 (1) (658 SE2d 382) (2008) (evidence that defendant lifted his shirt and showed victim the handle of toy gun in his pants was sufficient to support finding that defendant used "an offensive weapon, or any replica, article, or device having the appearance of such weapon," thus supporting armed robbery conviction). Thus, Phillips' statement did not support a charge on the lesser included offense of robbery.

*Judgment reversed. Miller, P. J., concurs. Goss, J., dissents.\**

**\*THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a).**

26

# In the Court of Appeals of Georgia

A18A0980. JOHNSON v. THE STATE.

GOSS, Judge, dissenting.

Although the majority grants appellant Darius Johnson a new trial on the ground that his right to be present during voir dire bench conferences was violated, this record shows that Johnson was present in the courtroom throughout voir dire and that, in Johnson's presence, his counsel agreed and participated in the trial court's procedure for conducting these bench conferences, and that Johnson thus acquiesced in his absence from them. I therefore dissent.

As the majority notes, the parties and the trial court discussed the procedures at issue repeatedly in the course of these proceedings. After the conclusion of general voir dire, but before the examination of individual proposed jurors, Johnson's counsel

specifically asked the trial court for guidance as to how bench conferences were to be conducted:

> [Counsel:] I don't know how the court wants to handle this, but when we do approach the bench, I believe *the court instructed that we will put on the record what was said.* Do you want to do that now since we approached earlier?

> [Trial court:] Sure.

(Emphasis supplied.) In accordance with this thus-established procedure, counsel noted for the record that her client had not been present at a bench conference as to jurors setting aside any preexisting opinions about punishment or guilt, and that she "wanted that to be on the record." The trial court then raised the security concerns involved in having "six lawyers and two defendants, one of whom is in custody," but only one deputy, in the same courtroom, and stated that in light of those concerns, the court was "not comfortable having everybody approaching" the bench.[1] The court then repeated that the procedure going forward would be to "put whatever discussion we have at the bench on the record at the appropriate time." Counsel for Johnson

---

[1] Both defendants were being tried for alleged violent felonies.

2

made no objection to this explanation or ruling, which was made in Johnson's presence.

Over the next several hours, the court conducted individual voir dire, which takes up almost 300 transcript pages of this record and includes more than a dozen bench conferences, six of which were initiated by appellant Darius Johnson's counsel. After a jury was selected, the trial court asked both sides whether there were "any matters . . . to consider prior to releasing the remainder of the panel," to which the parties replied that there were not. The venire was released moments afterward. Shortly before adjourning at 8:05 p.m., the trial court noted that "there were a couple of bench conferences this afternoon" pertaining to whether jurors should be struck, and asked whether there was "anything that anybody needs to put on the record in reference to any of these bench conferences we had?" Only at this point did counsel make the vague statement that her client "didn't waive any rights or anything by not approaching."

One form of effective waiver in these cases is when counsel waives the defendant's right to be present at a critical stage in the proceedings, which includes voir dire bench conferences on the subject of replacing prospective jurors, "in open court while the defendant is present[.]" *Gillespie v. State*, 333 Ga. App. 565, 567 (774

3

SE2d 255) (2015). "[I]n this context, a defendant's presence means that he can 'see and hear' the proceedings." Id., quoting *Zamora v. State*, 291 Ga. 512, 518 (7) (b) (731 SE2d 658) (2012).

Although the majority construes the State's brief on appeal as conceding that Johnson's counsel requested his presence at bench conferences during voir dire,[2] the record does not support this conclusion. Rather, this record shows that in response to an inquiry from Johnson's counsel, the trial court explained its reasons for not including Johnson in voir dire bench conferences; that neither Johnson nor his counsel objected or made any other response to this ruling; that the remainder of voir dire, including numerous bench conferences, was conducted in accordance with the trial court's announced procedure; that counsel initiated six of these bench conferences but did not perfect the record as to either the topics discussed or her client's absence from them; and that the venire was excused and the jury sworn in

---

[2] The State writes that Johnson's counsel requested his presence at the bench conferences "at the beginning of trial." For this statement, however, the State cites only the vague "objection" made after the jury was struck and the venire released, which was made before opening statements and the first witness, and thus also before "the beginning of trial."

4

without any further objection.[3] Only after this point did Johnson's counsel suggest that her client had not waived "any rights or anything by not approaching," and Johnson himself never voiced any objections or concerns. Finally, at the hearing on Johnson's motion for new trial, counsel did not provide any explanation as to why she did not perfect the record on this issue.

Under these circumstances, I cannot agree with the majority's conclusion that Johnson "was not waiving his right to be present by not being present during the bench conferences." On the contrary, the only reasonable conclusion to be drawn from this record is that Johnson acquiesced in his absence from the bench conferences at issue. See *Brewner v. State*, 302 Ga. 6, 12 (II) (804 SE2d 94) (2017) (when counsel affirmed in client's presence that he had "no objection to [a] juror's dismissal[] or to the trial court's matter of handling the situation," the client was barred from asserting error on appeal); *Heywood v. State*, 292 Ga. 771, 775 (3) (743 SE2d 12) (2013) (when a trial court advised those present about the topic of a bench conference, a defendant's "failure to voice any objection," "either directly or through counsel, constituted acquiescence in his counsel's waiver of his right to be present"); *Williams*

---

[3] Typically, a court reporter can record the contents of a bench conference if a request to do so is made, particularly when counsel seeks to perfect an objection or motion outside the hearing of any jurors.

*v. State*, 300 Ga. 161, 166 (3) (794 SE2d 127) (2016) (when client was present during conference and court's announcement that juror was excused, and when counsel was not later called to testify on the subject, the client "acquiesced in her trial counsel's waiver of her presence"). I therefore dissent.